George S. McGOVERN, Plaintiff,

v.

Glenn MARTZ and Washington News
Syndicate, Defendants.

No. 2114–58.

United States District Court
District of Columbia.

March 30, 1960.

Max Kampelman, Washington, D. C., Leon Silverman, New York City, for plaintiff.

Carl L. Shipley, Washington, D. C., for defendants.

YOUNGDAHL, District Judge.

This case is before the Court on plaintiff's motion for judgment on the pleadings or summary judgment with respect to defendants' counterclaims, and defendants' motion for judgment on the pleadings or summary judgment.

Plaintiff, a member of the House of Representatives, has brought suit against the defendants for libel resulting from their publication of a weekly newsletter entitled "The Lowdown on Farm Affairs from Washington" (Volume 5, Number 27, dated August 1, 1958). The gravamen of the complaint is that the newsletter falsely stated that the plaintiff had a "connection with" and sponsored "the notorious Communist Front known as the 'American Peace Crusade' " and in addition, reprinted only a portion of a House Report,[1] which had the effect,

---

1. No. 378, 82d Cong., 1st Sess. entitled "Report on The Communist 'Peace' Offensive" (prepared and released by the Committee on Un-American Activities, U. S. House of Representatives; dated April 1, 1951).

plaintiff alleges, of falsely signifying Congressional agreement that plaintiff was a sponsor of the American Peace Crusade.

The defendants have denied the damaging allegations in the complaint and have lodged two counterclaims. The first alleges that plaintiff,

> " * * * for the malicious purpose of injuring counterclaimants in their trade and business, did on July 30, 1958, cause to be published of counterclaimants in the appendix of the Congressional Record (page A–7032, August 5, 1958 issue), not as a part of any official business of the Congress or any Committee thereof, but solely for personal purposes of attack in and injury to the reputation of counterclaimants, the following false, scandalous, defamatory and highly injurious libel, to wit:

> " ' * * * I have been disturbed by the senseless and unscrupulous smears directed at the Farmers Union by one Glenn Martz, a Washington writer of sorts who edits a newsletter on farm affairs, which he very appropriately calls the Lowdown. Its chief purpose seems to be low-

down attacks designed to discredit the leadership and the purpose of a great farm organization—the Farmers Union. * * *

> " 'The Lowdown editor, Mr. Martz, has been at the business of low-level shooting for a long time. As a matter of fact some years ago he filed a story in a prominent daily newspaper in my state which promptly involved this newspaper in a libel suit that cost them many thousands of dollars in damages.' "[2]

In the second counterclaim, defendant Martz alleges that in a letter dated August 29, 1957, "and on numerous occasions subsequent thereto", the plaintiff "caused to be published and republished" the following defamatory statement:

> " * * * It is an established fact that Mr. Martz is employed by a rival farm organization for the specific purpose of defaming the Farmers Union and to do all the harm he possibly can without actually libelling the organization."

## PLAINTIFF'S MOTION.

### First Counterclaim

In his reply, plaintiff admits that the statement complained of was inserted by

---

The part that defendants reprinted was a "Daily Worker" story, reprinted by the Committee, which listed plaintiff as one of the sponsors of the American Peace Crusade (see pp. 138–139); the part omitted from the newsletter was the Committee's statement in bold type in the front of the report:

"Note.—The names of the persons mentioned in this report as being connected with the organizations which are herein discussed were taken from actual documents of these organizations and the public press.

"It has come to the attention of the committee that some of the persons who are so described in either the text or the appendix withdrew their support and/or affiliation with these organizations when the Communist character of these organizations was discovered. *There may also be persons whose names were used as sponsors or affiliates of these organizations without permission or knowledge of the individuals involved.*

"The committee, having no desire to charge any innocent person with having Communist affiliations, will therefore publish the names of any individual who has so withdrawn from these organizations or whose name was used by these organizations without permission or knowledge in a future report if such person will communicate with the committee, giving the circumstances in his particular case. · (Emphasis supplied.) It is the omission of the italicized sentence about which the plaintiff particularly complains.

2. The Court has quoted from defendants' counterclaim which inaccurately quotes from the Congressional Record in the following respects: the asterisks following "Union" incorrectly signify that something has been omitted; "state" should be capitalized; the word "fine" should be inserted between the words "this" and "newspaper".

him in the Congressional Record. He adds that the insertion was an Extension of Remarks, made with the consent of the House,[3] and is protected by an absolute privilege.

■ The privilege of legislators to be immune from civil process for their actions or statements in legislative proceedings had its beginnings at least as early as 1399.[4] Initially acting as a shield against executive interference with the individual legislator, it has since come to protect against actions for defamation as well. The immunity was believed to be so fundamental that express provision is found in the Constitution,[5] although scholars have proposed that the privilege exists independently of the Constitutional declaration "as a necessary principle in free government." [6]

■ Its purpose is clear: insure legislative peace of mind. The theory is that in a democracy a legislature must not be deterred from frank, uninhibited and complete discussion; since "[o]ne must not expect uncommon courage even in legislators," [7] reprisal by the executive or judicial branches for what legislators say or do within the legislature must be impossible in order to obtain free discussion and the consequent benefits to the public.[8] Thus the privilege is absolute: purpose, motive or the reasonableness of the conduct is irrelevant.

■ The defendants have contended that the privilege, absolute when it exists, is limited, nevertheless, by a requirement that the conduct complained of be "pertinent" to official business of the legislature. While it appears that the common law immunity was limited to conduct that had some relation to the business of the legislature,[9] Cochran v. Couzens,[10] clearly teaches that Article 1, § 6, cl. 1, knows no such bounds. Cochran had brought suit against Senator Couzens for slanderous remarks on the floor of the Senate. The Senator asserted his privilege and moved to dismiss; although the plaintiff's declaration averred that the Senator spoke "unofficially and not in the discharge of his official duties as a Senator * * * of and concerning a subject *not* then and there *pertinent or relevant* to any matter under inquiry by the said Senate * * *", the lower court sustained the motion and

3. 104 Cong.Rec. 14337 (daily edition, July 30, 1958) (curiously enough, it is unreported in the bound edition). The Court also has before it an affidavit of Eustis E. Morseberger, Assistant Planning Manager of the United States Government Printing Office, which states the remarks were "printed on the basis of authority previously given to Representative George McGovern, of South Dakota, by unanimous consent of the House of Representatives to revise and extend his Remarks." The plaintiff's statement was published in the Appendix to the daily record (which is no longer permanently bound except for a limited number of copies).

4. Van Vechten Veeder, "Absolute Immunity in Defamation: Legislative and Executive Proceedings," 10 Col.L.Rev. 131, 132 (1910); Yankwich, "The Immunity of Congressional Speech—Its Origin, Meaning and Scope", 99 U.Penn.L.Rev. 960, 962 (1950–51); Barr v. Matteo, 1959, 360 U.S. 564, 579, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (dissenting opinion); and see Tenney v. Brandhove, 1951, 341 U.S. 367, 372–377, 71 S.Ct. 783, 95 L.Ed. 1019.

5. Art. 1, § 6, cl. 1: " * * * and for any Speech or Debate in either House, they [the Senators and Representatives] shall not be questioned in any other Place."

6. 1 Cooley, "Torts" § 154 (4th Ed. 1932). And see Veeder, supra, note 4 at 131.

7. Frankfurter, J. in Tenney v. Brandhove, supra, note 4 at page 377 of 341 U.S., at page 788 of 71 S.Ct.

8. See Judge Learned Hand's statement in Gregoire v. Biddle, 2 Cir., 1949, 177 F.2d 579, 581.
 Reprisal by the legislature itself is permitted, art. 1, § 5, cl. 2, although Congress has not been enthusiastic about exercising this power. See Judge Yankwich's discussion, supra, note 4, at 972, and see discussion of the episode, "without precedent", (in 1924) concerning Representative Blanton in Luce, "Legislative Assemblies" 515–16 (1924).

9. Prosser, "Torts" § 95 (2d Ed. 1955) citing 1808, Coffin v. Coffin, 4 Mass. 1, 3 Am.Dec. 189.

10. 1930, 59 App.D.C. 374, 42 F.2d 783.

the Court of Appeals affirmed, saying that the averment "is a mere conclusion and entirely qualified by the averment that they were uttered in the course of a speech." [11] (Emphasis supplied.)

Thus if the counterclaim here were confined to an allegation that the defamatory words were spoken on the floor of the House, plaintiff's motion would have to be granted. Moreover, it would be of no avail to the defendant to show that the libel appeared in the Congressional Record since everything said on the floor of the House, as a matter of course, is published in the Congressional Record;[12] thus, to hold the privilege inapplicable to material appearing therein would constitute a complete subversion of the privilege. The Court further concludes that the privilege also embraces material unspoken on the floor of the House but inserted in the Congressional Record by a Congressman with the consent of the House. It cannot be assumed that the complete interchange of ideas and information can be achieved solely from debate on the floor of the House; in point of fact, Congressmen often utilize the Congressional Record as their vehicle to impart, and their source of acquiring, necessary information. Keeping in mind the social policy underlying the privilege, it should—and so does—protect Congressmen for publication in the Congressional Record.

But what of *re*publication? Should an absolute privilege exist to bar suits for defamation resulting from a Congressman's circulation of reprints or copies of the Congressional Record to non-Congressmen? The reason for the rule—complete and uninhibited discussion among *legislators*—is not here served. Accordingly, the absolute privilege to inform a fellow legislator (either by way of speech on the floor or writings inserted in the Record) becomes a qualified privilege for the republication of the information. "Though a member of congress is not responsible out of congress for words spoken there, though libellous upon individuals; yet if he causes his speech to be published, he may be punished as for a libel by action or indictment. This is the English and the just law. [citing Rex v. Abingdon, 1 Esp. 226, Peake 310 (1795); Rex v. Creevy, 3 Eq.N.P.Cases, 228, 1 M. & S. 273 (1813)]." 1 Kent's Commentaries 249, note c (8th Ed. 1854).[13]

The American Law Institute's Restatement of Torts § 590, comment b reads, in part:

> " * * * Defamatory matter spoken or otherwise uttered in a legislative proceeding is a publication thereof and a report of the legislative proceeding is a republication of the defamatory matter. Such republication is not absolutely privileged under the rule stated in this Section, but is conditionally privileged under the rule stated in § 611. Thus there is no absolute privilege to disseminate the Congressional Record or reprints therefrom, either by a Senator or a Congressman or by a third person. * * * "

In Long v. Ansell,[14] the defendant Senator appealed from an order denying his motion to quash service in a suit which charged that the Senator had defamed the plaintiff by circulating in the District of Columbia and elsewhere, re-

11. 59 App.D.C. at page 375, 42 F.2d at page 784. Cf. Kilbourn v. Thompson, 1880, 103 U.S. 168, 204, 26 L.Ed. 377.

12. 44 U.S.C.A. § 182a. 44 U.S.C.A. § 183 sets forth the persons and places to receive gratuitous copies; e. g., each Representative receives three copies of the bound edition and sixty-eight copies of the daily edition.

13. And see White v. Nicholls, 1845, 3 How. 266, 44 U.S. 266, 267, note 8, 11 L.Ed.

591; Newell, "Slander and Libel" § 355 (4th Ed. 1924); Stockdale v. Hansard, 9 A. & E. 1, 3 Jur. 905, 112 Eng.Rep. 1112 (1839); cf. the effect of the Parliamentary Papers Act, Stat. 3 & 4 Vict., ch. 9 (1840), Stockdale v. Hansard, 11 A. & E. 253, 8 Dowl. 148, 113 Eng.Rep. 411 (1840).

14. 1934, 63 App.D.C. 68, 69 F.2d 386, 94 A.L.R. 1466, affirmed 1934, 293 U.S. 76, 55 S.Ct. 21, 79 L.Ed. 208.

prints of the Congressional Record containing a speech made by the defendant on the floor of the Senate. In affirming, the Court of Appeals said:

"The charge here is not for slander resulting from a speech made on the floor of the Senate, but for libel in publishing and distributing a copy of that speech, together with a letter calling special attention to the article.

"Defendant pitches his defense upon the exemption from arrest, and not upon his exemption from responsibility for statements made in his speech on the floor of the Senate. *But were that claim advanced, it would be without force,* since the acts charged have only remote connection with the speech. While the published articles were in part reproductions of the speech, *the offense consists* not in what was said in the Senate, but *in the publication and circularizing of the libelous documents.*" (Emphasis supplied.) 63 App.D.C. at page 71, 69 F.2d at page 389.

And see Cole v. Richards, 1932, 108 N.J. L. 356, 158 A. 466; Methodist Federation for Social Action v. Eastland, D.C.D.C. 1956, 141 F.Supp. 729 (dissenting opinion).

Congressmen undoubtedly have a responsibility to inform their constituents, and undoubtedly circulation of the Congressional Record is a convenient method. It does not follow from this, however, that an absolute privilege is necessary; a qualified privilege is enough. Congressmen are thereby protected and thereby free to inform their constituents —even if the information is defamatory —so long as the act is not done maliciously.

"* * * [T]he existence of a privilege itself for the circulation of a speech by the person who made it, is in ordinary cases warranted and required by the general rule already referred to, by which fair reports of the proceedings may be privileged.

* * * The true rule, it is apprehended, should be to put the circulation of speeches altogether upon the footing of fair reports, justifying the speaker only as he would be justified as the publisher of a newspaper reporting to the world the proceedings of the legislature. * * * The privilege in question is of course of the kind called *prima facie;* that is, it exists on the footing that the act of the sender was not malicious—not done, e. g. with an indirect motive of wrong. * * *" 1 Story, "Commentaries on the Constitution of the United States" (5th Ed. 1905) § 866, n. (a).

■ When analogy to the judicial privilege is made, it further appears reasonable to hold that Congressmen have only a qualified privilege, and thus are liable for malicious defamation, for the unofficial dissemination of the Congressional Record. While a judge has an absolute privilege for the official publication of a judicial statement (as by reading an opinion in open court or filing it in the clerk's office), there is only a qualified privilege for the unofficial circulation of copies of a defamatory opinion. Murray v. Brancato, 1943, 290 N.Y. 52, 48 N.E.2d 257; Annotation, 1943, 146 A.L. R. 913; Francis v. Branson, 1933, 168 Okl. 24, 31 P.2d 870; Note, 12 Ford.L. Rev. 193 (1943).

The Court concludes that the first counterclaim must be dismissed since the allegations restrict it to a claim for damages flowing from an insertion in the Congressional Record; no allegation of republication is made. That this is all that was intended is clearly displayed by an examination of the deposition of the plaintiff which was taken on two separate occasions by the defendants and covers 177 pages. No question regarding the circulation of copies or republication of the Record in any regard was put to the plaintiff by defense counsel. Further, the Points and Authorities submitted in defendant's opposition to plaintiff's motion reads, at p. 1: "Defendants countersued Mr. McGovern for the same

amount of damages for libel on grounds Mr. McGovern *inserted in the Congressional Record* a false and injurious statement \* \* \*" (Emphasis supplied.). The dismissal is with leave to amend to state a claim that is not properly subject to a plea of absolute privilege.

*Second Counterclaim*

Plaintiff contends that this counterclaim must be dismissed because it is barred by the one-year statute of limitations for libel actions.[15] Defendants argue that since the counterclaim "relates" to the "same basic matter" as plaintiff's claim, the statute of limitations, tolled by the filing of the complaint, has not run against the counterclaim. That is to say, defendants argue the tardy filing of the counterclaim is excused by the timely filing of the complaint.

 While a recoupment is not barred by the statute of limitations if the main action itself is timely, this counterclaim is not a recoupment since it is based on a different transaction.[16] Further, the counterclaim is not a set-off since the claims are unliquidated and thus, even if the law in the District of Columbia were that a set-off could be used defensively despite the limitations

statute,[17] the counterclaim could not be permitted.

 Accordingly, the counterclaim is dismissed as barred by the statute of limitations.[18]

### DEFENDANTS' MOTION.

 Defendants have moved for judgment on the pleadings.[19]

The complaint states a claim for libel, unprotected by an absolute privilege. As discussed in connection with the plaintiff's privilege, there is only a qualified privilege for the republication of public reports. De Savitsch v. Patterson, 1946, 81 U.S.App.D.C. 358, 159 F.2d 15.

Whether the defendants acted maliciously is thus a material question of fact; since it is in dispute, summary judgment cannot be entered. Moreover, it is essential to the privilege, claimed by the defendants, that their republication was a fair and accurate one. It is undisputed that only a portion of the House Report was set forth in the newsletter and also that defendants commented on the Report. Whether the privilege is thus available at all is also in dispute.[20]

The motion by the defendants is denied.

15. D.C.Code § 12–201.

16. See discussion and cases cited in 3 Moore's Federal Practice para. 13.02, n. 1, para. 13.11.

17. *Durant v. Murdock*, 1894, 3 App.D.C. 114, although the court qualifies the rule with the statement that the set-off "must have some relation to the principal claim". 3 App.D.C. at page 124. This is confusing since a set-off arises out of a different transaction from the main claim, by definition.

In an action for slander filed within the statutory period, the defendant counterclaimed for libel and attempted to rely upon the timely filing of the complaint to justify the late filing of the counterclaim. The court held that the "statute of limitations continues to run in respect of a set-off which has no relation to the principal claim", relying upon Durant v. Murdock, although the claims did not appear to involve set-offs since, for one thing, unliquidated amounts were involved. Walker v. Pilkerton, D.C.D.C.1949, 82 F.

Supp. 321, 322. See also Sullivan v. Hoover, D.C.D.C.1947, 6 F.R.D. 513.

18. The counterclaim alleges the libel was committed by plaintiff on August 29, 1957 "and on numerous occasions subsequent thereto". Both in his moving papers and on oral argument, defense counsel failed to assert that the quoted language, along with the other allegations, states a claim *within* the statutory period. The Court concludes that the quoted language is mere "lawyer's throw-in", insufficient to bar dismissal. And see Pentz v. Downey, D.C.E.D.Pa.1953, 110 F.Supp. 642, 644.

19. The motion is so titled; however, the moving papers ask the Court to take into consideration "all matters in the file in this case, including depositions. \* \* \*" The motion is thus one for summary judgment. Federal Rule of Civil Procedure, 12(c), 28 U.S.C.A.

20. See discussion in Prosser, supra, note 9, pp. 623–25, 1 Harper & James, "Law of Torts" § 5.24, and cases there cited. Restatement of Torts § 611.