53 CCPA
## The WILLIAMSON–DICKIE MANUFACTURING COMPANY, Appellant,

v.

### MANN OVERALL COMPANY, Inc., Appellee.

**Patent Appeal No. 7528.**

United States Court of Customs and Patent Appeals.

May 5, 1966.

William E. Schuyler, Jr., Francis C. Browne, Andrew B. Beveridge, Joseph A. DeGrandi, Washington, D. C., for appellant.

Shanley & O'Neil, Washington, D. C. (Robert J. Patch, James J. Shanley, Washington, D. C., of counsel) for appellee.

Before RICH, Acting Chief Judge, MARTIN, SMITH and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

RICH, Acting Chief Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board, 141 USPQ 934, adhered to on rehearing, dismissing appellant's opposition (No. 39,-765) to registration of GOLDEN HORSESHOE and granting appellee's counterclaim to cancel appellant's registration of HORSE SHOE, one of two registrations relied on by appellant in the opposition.

The following are the four salient facts involved, stated in chronological order:

1. The trademark "HORSESHOE" COLLAR (in rectangular box) was registered, No. 349,826, Sept. 7, 1937, to a predecessor in title of appellant for "men's, boys' and children's outer graments, consisting of coats, vests, pants and trousers and overcoats."

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge WORLEY, pursuant to provisions of Section 294(d), Title 28, United States Code.

2. Appellee commenced using in 1947 a trademark for "overalls and western style pants" consisting of the outline in stitching of a horseshoe, open end up and centered under two closely spaced lines of straight stitching along the top edge of a substantially rectangular pocket, Reg. No. 509,324, May 3, 1949. We shall refer to this mark as "stitched horseshoe."

3. Appellant registered the trademark HORSE SHOE for "dungarees for the use of men, women, and children," Reg. No. 607,061, June 7, 1955.

4. Appellee applied for registration of GOLDEN HORSESHOE Ser. No. 55,490, filed July 17, 1958, as a trademark for "overalls, dungarees, trousers and denim jackets," claiming first use February 10, 1958.

This proceeding started by appellant's filing of a notice of opposition to the last-mentioned application, item 4, relying on its prior registrations, items 1 and 3.

Appellee, as a part of its answer to the notice of opposition, asked "affirmative relief by way of cancellation of registration No. 607,061, of HORSE SHOE, item 3, based on its prior use of "a horseshoe trademark," attaching a copy of its registration No. 509,324, the stitched horseshoe, item 2.

Appellant moved to dismiss the counterclaim for affirmative relief on the ground it could not be entertained, as a petition to cancel under section 14 of the Trademark Act of 1946 (15 U.S.C. § 1064), because appellee had not paid the fee required by section 14 ($25 under section 31) upon the filing of a petition to cancel, noting in its motion to dismiss

that more than 5 years had then elapsed from the issuance of the registration sought to be cancelled and that "an application to cancel a registration may be entertained only if said application for cancellation is filed with the prescribed fee within five years of the date of registration of the mark sought to be cancelled." That registration issued June 7, 1955, and it was then July 15, 1960. The answer in which the affirmative defense was set up, without payment of fee however, was filed within the five year period, on May 31, 1960.

The board denied the motion to dismiss on the authority of Sunbeam Corp. v. Duro Metal Products Co., 106 USPQ 385 (Comm'r), saying that the filing of the notice of opposition, in which the registration sought to be cancelled was relied on, tolls the statute of limitations during the pendency of the action. Appellant challenges this ruling and the correctness of the *Sunbeam* decision, as it did in requesting rehearing by the board.

The first question for decision is whether the board erred in cancelling appellant's registration of HORSE SHOE, item 3, thereby depriving appellant of the right to rely on it as a ground of opposition.[1] We believe that it did.

The relevant parts of the statute permitting cancellation of registrations, Sec. 14, read as follows (emphasis ours):

A verified petition to cancel a registration of a mark, stating the grounds relied upon, may, *upon payment of the prescribed fee,* be filed by any person who believes that he is or will be damaged by the registration of a mark on the principal register established by this Act, or under the Act of March 3, 1881, or the Act of February 20, 1905—

[1] Of interest, but not directly involved here, is the fact that appellee Mann filed a separate cancellation proceeding to cancel appellant's other registration of "HORSE-SHOE" COLLAR, cancellation No. 7,-645, and attempted to have that proceeding consolidated with this one. Appellee withdrew that petition, however, without consent of appellant here, and the proceeding was dismissed with prejudice at which time (July 10, 1963) appellee was put under an order to show cause herein why judgment should not be rendered against it and its counterclaim dismissed. Thereafter appellee responded, appellant replied, the Patent Office found this proceeding to involve different marks and issues, and proceedings herein were resumed.

(a) within *five years from the date of the registration* of the mark under this Act * * *.

Trademark Rule 2.111 contains the same five-year limitation. Five years from the date of Reg. No. 607,061, which was on the principal register under "this Act," expired on June 7, 1960. It is not disputed that no fee in support of the request to cancel was paid on or before that date. The fee must be paid when cancellation is requested in an answer to an opposition just as in an original petition to cancel. Trademark Rule 2.106(b) so provides. Sunway Fruit Products, Inc. v. Productos Caseros, S.A., 130 USPQ 33 (Comm'r, 1960), so held, saying (at p. 34):

> Applicant contends * * * that the requirement for a fee in Section 14 applies only to original petitions to initiate or provoke a cancellation proceeding and not to answers to notices of opposition which request cancellation of a registration under the provisions of Rule 2.106(b). However, Section 14 makes "payment of the prescribed fee" a prerequisite to the right to apply to cancel a registration and sets forth no exceptions. * * * A party making such a request * * * is subject to the statutory requirement for a fee.

■ It has also been held that the payment of the fee is a jurisdictional requirement without which a petition has not been filed in compliance with the statute, section 14. In *Sunway* the counterclaim for cancellation was stricken for want of the fee and the petition to reinstate it was denied. See also The Kroger Co. v. Country Club Ice Cream Co., 130 USPQ 34 (Comm'r, 1961). In similar cases involving filing fees and statutes of limitation other courts have held that

payment of the fee within the time limited is necessary to give the court jurisdiction. The court in Turkett v. United States, 76 F.Supp. 769 (D.C.N.D.N.Y.), granted a motion to dismiss a complaint under the Federal Tort Claims Act requiring the action to be begun within one year because the filing fee was not paid to the court clerk within that year. In Anno v. United States, 113 F.Supp. 673, 125 Ct.Cl. 535, the United States Court of Claims granted a motion to dismiss a petition filed before the end of a six-year limitation period because no filing fee was received within the period, following *Turkett*. It held that the claim was not "filed" until the fee was paid.

■ Appellee argues that appellant has no standing to complain about how and when the Patent Office collects its fees. We disagree. Appellant is entitled to show that no fee was paid within five years as required by section 14 and that for that reason the request to cancel came too late. Appellee contends that the cases cited above, which are relied on by appellant, do not establish the principal for which they are cited. We do not agree.

■ The next assertion of appellee is that the five-year period specified in section 14 should not be applied against it for the reason that the bringing of the opposition, in which the registration of the mark sought to be cancelled was relied on, tolled the statute of limitations, the notice of opposition having been filed within the five-year period. The authority relied on for this proposition is the decision of the Assistant Commissioner in *Sunbeam* supra. Following that case in its interlocutory decision, the board herein held the statute of limitations was tolled.[2] Appellant contends

---

2. Following the filing of the answer to the notice of opposition in which the request to cancel was contained, appellant moved to dismiss the request for cancellation as not timely with respect to the payment of the required fee. The board denied the motion, with opinion. Request for reconsideration was filed. On both occasions the board relied on *Sunbeam* and

stated its view that filing the notice of opposition tolled the statute of limitations during the pendency of the action. Opposer then filed a Reply to the counterclaim raising the question of its timeliness. The board's first opinion on the merits made no mention of this point. A request for reconsideration noted the failure to mention this defense to the

that *Sunbeam* incorrectly interpreted the precedents relied on, that the decision was wrong and that therefore the board erred in following it.

In the opinion in *Sunbeam* a dozen authorities were referred to and the decision was based on what the Commissioner deemed to be the "weight of authority," recognizing that "There is some authority to support a contrary holding." Appellant here relies on three cases in the District of Columbia courts which are not included among those cited in *Sunbeam* and are alleged to be contrary to the decision therein. Appellee says they "have no relation to the present situation." We think the views of both parties are too extreme.

*Sunbeam* dealt with a situation substantially like that before us, the filing of an opposition just before the expiration of the five-year limitation on a petition to cancel, the mark sought to be cancelled being relied on as a basis for opposing registration, and an answer containing a counterclaim for cancellation filed after the end of the period. An extensive review of authority resulted in a reasoned opinion the conclusion of which was stated as follows:

> In the present case, applicant's position seems to be that since opposer relied upon its registration and asserted rights in its mark as evidence by its registration before expiration of the five-year period, applicant should not be precluded from challenging those rights, irrespective of expiration of the five-year period during the pendency of the action. The weight of authority supports its position.
>
> * * * it is held that the filing of the pleading in which the registration is relied upon tolls during the pendency of the action, the time within which an affirmative defensive action may be filed.

This type of proceeding, including as it does opposition to registration predicated, at least in part, on rights flowing from other registrations, with statutory provisions for registration as well as for opposition and cancellation, is sui generis and not strictly comparable to cases of contract, set-off, or recoupment involving claims for libel, slander, assumpsit on promissory notes and the like. The situation is one not likely to arise often nor does it seem to be of vital importance to the law of trademarks. We suppose that the owner of a registration nearing the five-year mark would appreciate that by waiting a few days or months until the period had run he could avoid subjecting his registration to a counterclaim for cancellation under the *Sunbeam* rule. Appellant's cases, which we have carefully considered, are Durant v. Murdock, 3 App.D.C. 114 (1894), a suit for slander with a counterclaim for libel and a one-year statute of limitations held not tolled by bringing the action. The court referred to the possible assertion of "any and all claims that the defendant might have against the plaintiff" but we are here dealing with no such all-inclusive category. The counterclaim here attacks the basis of the opposer's opposition. Walker v. Pilkerton, D.C., 82 F.Supp. 321, was a slander suit with a counterclaim for libel and followed Durant. McGovern v. Martz, D.C., 182 F.Supp. 343, involved a suit by a Congressman for libel against a Washington writer and publisher who counterclaimed for libel. While the "same basic matter" was said to be involved on both sides, the counterclaim was held barred by the statute of limitations. It was held not a recoupment because based on "a different transaction" and not a set-off because the claims were unliquidated. We do not find in these decisions sufficient reason to overrule *Sunbeam*, as we are asked to do. We will therefore regard

counterclaim with the request that the board make its position clear. In a second opinion the board said:
> In this regard, opposer is advised that any interlocutory decision of this Board is subject to review on appeal from a

final decision on the merits of a case. This explanation of how this question comes before us will serve to explain why there is no reference to it in the published opinion of the board and no reference to the *Sunbeam* case.

the counterclaim as properly before the board on the ground the notice of opposition tolled the statute.

This brings us to the merits of the board's action in cancelling opposer's Reg. No. 607,061, for HORSE SHOE. Cancellation appears to have been based on appellee's admitted prior use and registration of the stitched horseshoe mark, item 2 supra. There is nothing else of record to support it. Some facts were stipulated in this case but no testimony was taken. The stitched horseshoe trademark is something more than just a horseshoe. It is a stitched outline of the horseshoe shape, open end up, it is centered on and occupies most of the space on a nearly rectangular pocket on "overalls and western style pants," the outline of the pocket being included as part of the mark so that placement thereon is part of the mark, and across the top edge of the pocket is a horizontal stripe consisting of two parallel lines of stitching. The making of the mark by sewing-machine stitches is part of it. The board deemed this mark to be "the legal equivalent" of the word-mark HORSE SHOE and lumped them both in the category of "these horseshoe symbols." The board opinion also speaks in terms of opposer's lack of right *to use* the mark HORSE SHOE, a matter with which neither the Patent Office nor this court is jurisdictionally concerned. The board also cited Pink Lady Corp. v. L. N. Renault & Sons, Inc., 265 F.2d 951, 46 CCPA 865, which, as a decision, we find distinguishable because there word-marks were involved on both sides. It was cited, however, only for a broad statement in the opinion that *words* and the *symbols* identified thereby will be given the same significance in determining likelihood of confusion. We think that statement, which was dictum in that case, must be read in the light of the facts in each case. We have more here than a bare horseshoe symbol.

One fact in this case is appellant's admitted ownership of the registration of "HORSESHOE" COLLAR and its prior use on clothing. While we do not agree that since the word COLLAR was disclaimed "separate and apart from the mark" it is tantamount to a registration of HORSESHOE, in the sense of giving appellant any rights in HORSESHOE alone as a mark, it does show that appellee was not first in the clothing field with a "horseshoe" mark. We also note the case of The Williamson-Dickie Manufacturing Co. v. Carl-Morris Mfg. Inc., 114 USPQ 257, referred to on various occasions by appellee, an opposition to the registration of BLUE HORSESHOE BRAND on an application filed August 16, 1951, for overalls and dungarees, in which the present appellant was unable to prevent the registration. That decision was in July, 1957. The mark appellant there relied on was its "HORSE-SHOE" COLLAR mark.

█ Under all the circumstances we do not believe that in 1960, when cancellation was asked for by appellee, about five years after the registration of HORSE SHOE by appellant, there was sufficient likelihood of confusion from the concurrent use of the two quite different marks to justify the board's decision to cancel.

We finally come, therefore, to the question of appellant's opposition to the registration of appellee's GOLDEN HORSE-SHOE, assuming opposer-appellant to be the owner of both the "HORSESHOE" COLLAR and HORSE SHOE registrations for the goods above named.

█ The board dismissed the opposition on the assumption appellant could rely only on "HORSESHOE" COLLAR and held that it and GOLDEN HORSE-SHOE do not look alike, differ substantially in sound and connotation, and are not reasonably likely, if in contemporaneous use, to cause confusion or to deceive. We agree.

Under the circumstances of this case, just as we feel that confusion will not be likely as between the stitched horseshoe mark and HORSE SHOE, so do we likewise feel that contemporaneous use of the latter and GOLDEN HORSESHOE will not be likely to confuse, deceive, or cause mistake.

One reason for our feeling in this matter is that the references cited by the examiner in the examination of the GOLDEN HORSESHOE application were "HORSESHOE" COLLAR, HORSE SHOE, and also BLUE HORSESHOE BRAND, Reg. No. 659,371. Appellee then cited the decision in the BLUE HORSESHOE BRAND case and argued for the registrability of its mark notwithstanding the references. It there pointed out that its own stitched horseshoe mark, earlier than all except the first cited registration, was produced by stitching with a golden colored thread. The Patent Office passed the application to publication, indicating its approval of the concurrent registration of all of these marks for substantially the same goods.

The decision of the Trademark Trial and Appeal Board is affirmed insofar as it dismissed the opposition and reversed with respect to its sustaining the counterclaim for cancellation.

Modified.

SMITH, Judge, concurs in the result.