**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jack P. INSCO, Defendant-Appellant.**

**No. 73-3990.**

United States Court of Appeals,
Fifth Circuit.

June 21, 1974.

See also, D.C., 365 F.Supp. 1308.

Benton L. Becker, Washington, D. C., F. Lawrence Matthews, Miami, Fla., for defendant-appellant.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Jeffry R. Jontz, Asst. U. S. Atty., Orlando, Fla., for plaintiff-appellee.

Before DYER and MORGAN, Circuit Judges, and KRAFT, District Judge.

DYER, Circuit Judge:

Jack Insco, an unsuccessful Republican candidate for Congress in the 1972 general election, was convicted in a bench trial of violating 18 U.S.C.A. § 612, which proscribes the publication or dissemination of anonymous written campaign materials in federal elections, for printing and distributing certain bumper stickers which did not contain the statutorily-prescribed attribution clause. We reverse.

I

In the fall of 1972, Insco was campaigning against the Democratic Party's nominee, William Gunter, for the congressional seat from Florida's Fifth District. During the final weeks of the campaign, Insco ordered approximately 2,500 bumper stickers which contained the following two words: "McGovern-Gunter." After being printed, the materials were distributed through Insco's official campaign organization until the election, which culminated unfavorably to Insco. Subsequently, in August 1973, a two-count indictment was returned, charging that by causing the unattributed bumper stickers to be published and distributed, Insco violated section 612, which provides:

> Whoever willfully publishes or distributes or causes to be published or distributed, or for the purpose of pub-

lishing or distributing the same, knowingly deposits for mailing or delivery or causes to be deposited for mailing or delivery, or, except in cases of employees of the Postal Service in the official discharge of their duties, knowingly transports or causes to be transported in interstate commerce any card, pamphlet, circular, poster, dodger, advertisement, writing, or other statement relating to or concerning any person who has publicly declared his intention to seek the office of President, or Vice President of the United States, or Senator or Representative in, or Delegate or Resident Commissioner to Congress, in a primary, general, or special election, or convention of a political party, or has caused or permitted his intention to do so to be publicly declared, which does not contain the names of the persons, associations, committees, or corporations responsible for the publication or distribution of the same, and the names of the officers of each such association, committee, or corporation, shall be fined not more than $1,000 or imprisoned not more than one year, or both.

Pursuant to the parties' stipulation of facts, the district court found Insco guilty[1] and entered sentence of six months' probation and a $1,000 fine, notwithstanding Insco's arguments that the statute did not specifically enumerate bumper stickers and that a judicial "expansion" of the measure to include such materials would violate due process.

### II

We are persuaded that under the unique circumstances of this case Insco was inadequately apprised by the provisions of section 612 of the culpable nature of his conduct at the time the charged offense occurred. We therefore refrain from addressing Insco's other constitutional contentions, including his charge of the statute's impermissible ov-

erbreadth. *Cf.* New York v. Duryea, N. Y.Sup.Ct.App.Div., 354 N.Y.S.2d 129, 1974.

As presently framed, section 612 contains both precise and general language. The measure proscribes in highly specific terms any anonymous card, pamphlet, circular, poster or dodger, but it also forbids any anonymous "advertisement, writing or other statement. . . ." Facially, therefore, section 612 seemingly sweeps within its ambit any written material with respect to federal candidates, including bumper stickers containing written words. In divining legislative intent, however, a venerable precept of statutory construction, the doctrine of *ejusdem generis,* warns against expansively interpreting broad language which immediately follows narrow and specific terms. To the contrary, this maxim of statutory analysis counsels courts to construe the broad in light of the narrow, in a common-sense recognition that general and specific words, when present together, are associated with and take color from each other. *See, e. g.,* United States v. Baranski, 7 Cir. 1973, 484 F.2d 556, 566; Adams v. Fazzio Real Estate Co., E.D. La.1967, 268 F.Supp. 630, 637, aff'd, 5 Cir. 1968, 396 F.2d 146; Sparks v. Celebrezze, E.D.Tex.1964, 228 F.Supp. 508, 512, aff'd, 5 Cir. 1965, 342 F.2d 286. The limiting principle of *ejusdem generis* has particular force with respect to criminal statutes, which courts are compelled to construe rigorously in order to protect unsuspecting citizens from being ensnared by ambiguous statutory language. *See, e. g.,* Mourning v. Family Publications Service, Inc., 1973, 411 U.S. 356, 375, 93 S.Ct. 1652, 36 L.Ed.2d 318; United States v. Campos-Serrano, 1971, 404 U.S. 293, 297–298, 92 S.Ct. 471, 30 L.Ed.2d 457; United States v. Clark, 5 Cir. 1969, 412 F.2d 885, 890. In light of these settled principles of statutory analysis, the more reasoned view of congressional intent is that by employing

---

1. Insco was found guilty of the substantive offense charged in Count 1 of the indictment. Count 2, charging conspiracy with the then co-defendant McMullen to violate section 612, was dismissed.

general terms in this context, Congress did not intend to sweep within the statute's coverage *all* campaign-related writings not specifically enumerated, particularly since any other view would render meaningless the detailed recitation of specific items. Thus, bumper stickers, under this analysis, are at least not *necessarily* included within the statute's coverage.

■ Mindful, however, that rules of statutory construction must not be employed to eviscerate manifest legislative intent, *see, e. g.,* United States v. Cook, 1966, 384 U.S. 257, 262, 86 S.Ct. 1412, 16 L.Ed.2d 516; United States v. Healy, 1964, 376 U.S. 75, 82, 84 S.Ct. 553, 11 L.Ed.2d 527; Hattaway v. United States, 5 Cir. 1962, 304 F.2d 5, 9, we think it appropriate to resort to the statute's legislative history for aid in ascertaining Congress' will. The predecessor of section 612 was enacted without debate in 1944 to outlaw any anonymous "printed, multigraphed, photographed, typewritten, or written pamphlet, circular, card, dodger, poster, advertisement, or any other statement. . . ." P.L. 544, 58 Stat. 914–915. As initially adopted, therefore, Congress did not include "writing" as a separate category of proscribed material. Indeed, this additional category was incorporated four years later, without discussion, as part of the 1948 general recodification of the criminal laws. The current Reviser's

Note suggests that the 1948 modifications were simply changes in phraseology without effecting any change of substance. 18 U.S.C.A. § 612 (1970) (Reviser's Note).

The scant legislative history in regard to the original enactment consists entirely of Senate Report No. 1390, which evidences Congress' concern with written "political statements" relating to federal candidates. No indication of any kind in this document suggests congressional concern with written campaign materials which served merely to identify a candidate, such as a political pin bearing only the candidate's name.

This circumscribed congressional attitude is also reflected in the only recorded debates concerning this statute or its amendments, the Senate debate in 1950 over a proposed change offered by Senator Joseph McCarthy.[2] Although speaking broadly of "material in a campaign," 96 Cong.Rec. 625, Senator McCarthy expressly noted that the statute's contemplated ambit did not include any "matter [contained] in a newspaper," notwithstanding the measure's broad language.[3] 96 Cong.Rec. 622. It is therefore inescapable that Congress was not intentionally imbueing the words "writing" or "statement" with their broadest possible meaning, since newspaper articles, for one, were expressly outside the Senators' contemplation.[4]

---

2. This proposed change, as adopted, merely criminalized the separate act of depositing unattributed materials in the mails. Senator McCarthy's proposal, importantly, repeated exactly those items already enumerated by the statute. Hence, in discussing this amendment, Congress had before it the precise terms which are still contained in the statute.

3. Senator McCarthy specified certain types of materials as warranting attribution clauses:

In other words, anyone who has something of a *derogatory* nature to say . . . should be required to sign his name to such material. We know that in the last campaign Senators had some very unpleasant experiences; we know that in various parts of the Nation there are some unscrupulous persons who do not

hesitate to write *libelous articles* about candidates, but do not have the courage to sign their names to such articles.

This amendment simply provides that such persons, if they pass such material through the mails will be guilty of a crime. 96 Cong.Rec. 625 (emphasis supplied).

This passage strongly suggests that Congress' concern was not so open-ended as to encompass all written materials. See note 2, *supra.*

4. Moreover, the statutory term, "advertisement," does not necessarily include bumper stickers, since an advertisement, as commonly understood, could be contained in a newspaper, yet the Senators concluded during the 1950 debate that such material would not be covered by the statute.

This excursion into the historical antecedents of section 612 suggests a consistency with the results yielded by applying settled rules of statutory construction—there is, at the least, no significant evidence that Congress sought to include bumper stickers *per se* within the statute's prohibition. Rather, by its concern with "political statements," Congress evidently sought to regulate only those written products of an organized campaign which were designed to convey something beyond mere candidate identification. Thus, had Insco for some reason magnanimously published and distributed bumper stickers containing only the last name of his opponent, "Gunter," there would have been no writing or statement within the statutory meaning of section 612.

■ The district court held, however, and we think rightly so, that bumper stickers, normally a medium for conveying name identification alone, could be of such a nature as to fall within the statute's compass. Little imagination is required to envision a bumper sticker which indisputably conveys a "political statement" so as to come within the scope of Congress' concern. The vexing dimension of Insco's criminal conviction, however, is not that bumper stickers can under certain circumstances be within the contemplation of section 612; nor that the "McGovern-Gunter" bumper stickers involved here could be interpreted as constituting a political statement, rather than an innocuous means of candidate identification; but, instead, that this particular defendant was inadequately alerted to the statute's possible coverage.

### III

■■ It is a fundamental tenet of our jurisprudence that statutes which proscribe conduct may not be so inartfully worded that persons of common intelligence must speculate as to their meaning. Lanzetta v. New Jersey, 1939, 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888. Vaguely phrased measures run afoul of substantive due process requirements by failing to convey with reasonable certainty the statute's intended sweep. "The underlying principle is that no man shall be held criminally responsible for the conduct which he could not reasonably understand to be proscribed." United States v. Harriss, 1954, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989.

■ The problem of providing fair notice in this case is raised by the unusual concatenation of three interrelated factors. First, as already noted, there is complete silence in both the statute and the legislative history in regard to bumper stickers, even though the measure enumerated certain campaign materials subject to its operation.[5] Second, according to the record in this case, a universal practice has prevailed among federal candidates in *not* affixing attribution clauses to bumper stickers employed in their campaigns. Indeed, exhibits received into evidence affirmatively demonstrate, for example, that presidential candidates in numerous elections have failed to abide by this apparent statutory mandate. Third, no prosecutions have ever been brought by the Department of Justice with respect to unattributed bumper stickers, despite this universal practice of omitting identification statements. Indeed, the only reported prosecution in the statute's twenty-nine year history was brought in 1961 in a case concerning anonymous pamphleteering during a senatorial campaign, an activity expressly contemplated by the statute. United States v.

---

After this 1950 modification, the statute was finally amended once again in 1970 to reflect the structural change in the Post Office Department, but, again, no substantive change was incorporated into the statute.

5. Indications in the record suggest that bumper stickers were extant at the time the statute was originally enacted, hence Congress when enumerating posters, cards, dodgers, and pamphlets must be presumed to have been cognizant of their existence. In any event, the items specified in the statute were never the subject of change even though Congress modified the measure in certain nonsubstantive respects in 1948, 1950, and 1970.

Scott, D.N.D.1961, 195 F.Supp. 440. Other references to section 612 in the cases have not purported to provide authoritative constructions of the statute and have simply indicated that the provision is aimed at disclosure with respect to "political statements" or "campaign materials." *See, e. g.,* United States Civil Service Commission v. National Association of Letter Carriers, AFL–CIO, 1973, 413 U.S. 548, 567 n. 13, 93 S.Ct. 2880, 37 L.Ed.2d 796; Communist Party v. Subversive Activities Control Board, 1961, 367 U.S. 1, 97 n. 39, 81 S.Ct. 1357, 6 L.Ed.2d 625; Rumely v. United States, 1952, 90 U.S.App.D.C. 382, 197 F.2d 166, 186; Bowie v. Williams, E.D.Pa.1972, 351 F.Supp. 628, 633–634; United States v. Painters Local Union No. 481, D.Conn.1948, 79 F. Supp. 516, 521, rev'd, 2 Cir. 1949, 172 F.2d 854.

It therefore appears that at the time Insco caused these materials to be published and distributed the regulatory slate in regard to bumper stickers was completely clean, at least insofar as section 612 was concerned. By the unique confluence of silence in an otherwise detailed statute and in its legislative history, a universally accepted omissive practice amoung federal candidates, the utter lack of prosecutorial interdiction of the practice for twenty-nine years, and the want of authoritative judicial construction of the statute as including this genre of campaign materials, Insco was lulled into the reasonable impression that, whatever the ethical considerations might be, his conduct did not run afoul of the federal anti-anonymity measure.

■ Undeniably, criminal statutes may be construed in such a way that they will apply to situations previously deemed beyond the measures' intended compass. *See, e. g.,* Bouie v. City of Columbia, 1964, 387 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894. Thus, the district judge has properly signaled the demise of the apparently presumed *per se* exemption of bumper stickers from statu-torily-prescribed attribution requirements. Anonymous bumper stickers conveying political statements, as the district court found the "McGovern-Gunter" bumper stickers to be, are henceforth published and distributed at the peril of the materials' sponsors. But the harsh consequences of this divination of congressional intent are being visited upon an individual who lacked authoritative guidance at the time he acted. This cannot lawfully be done. *Bouie, supra,* at 362–363.

■ In so holding, we jeopardize not one whit the discretion which prosecutors inarguably enjoy in selecting particular cases for prosecution. *See, e. g.,* Oyler v. Boles, 1962, 368 U.S. 448, 455–456, 82 S.Ct. 501, 7 L.Ed.2d 446; United States v. Steele, 9 Cir. 1972, 461 F.2d 1148; United States v. Ahmad, M.D.Pa.1972, 347 F.Supp. 912, *modified,* 3 Cir. 1973, 482 F.2d 171. Nor do we hold or imply that a statute can lie dormant for a considerable period of time only on pain of, in effect, immunizing proscribed conduct until such time as the statute has been judicially resuscitated. We treat here only the extraordinary facts, unlikely of repetition in other contexts, presently before us. And we cannot overlook the fact that we deal not with a remedial measure undeserving of a niggardly judicial construction, but rather with a statute that potentially deprives one of liberty or property. Where freedom is at stake, ambiguities and doubts as to statutory application, manifestly existing here, must be resolved in favor of the accused. *See, e. g.,* United States v. Enmons, 1973, 410 U.S. 396, 411, 93 S.Ct. 1007, 35 L.Ed.2d 379; Rewis v. United States, 1971, 401 U.S. 808, 812, 91 S.Ct. 1056, 28 L.Ed.2d 493; United States v. Etheridge, 6 Cir. 1970, 424 F.2d 951, cert. denied sub nom., Cole v. United States, 1971, 400 U.S. 993, 91 S.Ct. 463, 27 L.Ed.2d 442; United States v. Illinois Central Ry., W.D.Tenn.1967, 269 F.Supp. 236, 240.

Reversed.